number 07-3222. Mr. Epstein, Epstein, and Epstein, Epstein, that's right. You know, usually in, yeah, I'm not going to go there. Yeah, I know. Philly's different. And Mr. Pavlok. I'm sorry. Is there a change of council here? That's what I have. Oh, they did change it. Every time I get into that conversation about whether it's Steen or Stein, all I can think of is Marty Feldman. My father worked for your father. My very first argument in this court was before Judge Becker, and he pointed out to me that it was Stein in Philadelphia. Whatever it may have been in New York where I was from, it's Stein in Philadelphia. It's like Shapiro in Philadelphia, but nowhere else. Good morning, Your Honor. May it please the Court, my name is Robert Epstein. I'm here today on behalf of the appellant, Mr. Gerald Smith. With the Court's permission, I'd like to reserve three minutes of my time. That's fine. Your Honor, the primary issue on this appeal is whether the Pennsylvania crime of involuntary servitude is categorically a crime of violence under the federal sentence in the island. The district court judge said it is, Ruth Smith, that the district court judge was mistaken. The district court judge's mistake here was that he believed that a required element of involuntary servitude is the use of force or the threat of force. It is not. If you look at the statute, if you look at the jury, the model Pennsylvania jury instruction, if you look at the one Pennsylvania case analyzing that provision, there is no requirement of the use of force or threat of force. I realize at the outset that this is a categorical approach, and you're absolutely correct. But just to run through what the facts were, he was on parole. He was stopped. He had two people in the car. You know, I'm kind of at difficulty answering the question because there's really no evidence in that regard submitted at the hearing. So anything in that regard is totally outside the record in this case. All we have, all that was submitted was the docket showing what he was actually convicted of. There was no charging documents or anything of that nature presented to the district court judge. Unlawful restraint and reckless endangerment. Yes, Your Honor. And so I guess 2902-2, the question is, is that a crime of violence? Yes, Your Honor. And then 2705, we'll deal with them one at a time. Let's deal with unlawful restraint right now. So he was convicted of 2902-A2, which provides it's a crime to hold another in a condition of involuntary servitude. There's no requirement there of the use of force or the threat of force. And if you look at these provisions, the statutory scheme that Pennsylvania has created, there's a first prong, 2902-A1, which provides that it's a crime to restrain another unlawfully in circumstances exposing them to risk of serious bodily injury. And if you look at the jury instructions for that crime, to restrain another unlawfully is to use force or the threat of force. So it makes perfect sense that prong 2, you wouldn't have that same requirement. Otherwise, there'd be no purpose in having two separate provisions like this. So your argument is that force is not an element of 2902-A2. That's correct, Your Honor. And the Pennsylvania case, Commonwealth v. Walls, the only case that has looked at this provision, only reported case anyhow, says that it can be violated not by force or the threat of force, but by coercion. And the coercion could be legal coercion. You can have an illegal immigrant who's here working for someone who's being made to work for the employer by a threat of arrest and deportation. And in fact, while there's a dearth of case law in Pennsylvania with this provision, there's lots of case law with the federal involuntary servitude provision. And that can be found at 18 U.S.C. 1584. And I would refer the court to a case, United States v. Alzansky, 54 F. 3rd 994. And in footnote 3 of that case, they say most involuntary servitude cases in recent years have been in the U.S. have involved migrant agricultural workers. Coercion is considered a crime of violence. Excuse me, Your Honor? Coercion is considered a crime of violence. I would submit no, Your Honor, because there's no... Under the guidelines, you mean. No, because there's no necessary threat of violence or use of violence. You can coerce somebody through a legal threat. I will have you arrested. I will have you deported if you don't continue to work for me at, you know, say, some market wages or no wages at all. That would be involuntary servitude. That's your typical involuntary servitude case. I would submit that is not a crime of violence. It certainly isn't a crime of violence under Prompt 1, which requires a use of force or threat of force. Well, maybe then, unless my colleagues have questions on that. I'm interested in Prompt 2, which, you know, I'd like your reaction as to that. You know, isn't there a potential risk of serious injury? I would submit no, Your Honor. That brings us to Begay, and Begay substantially changes the legal analysis under Prompt 2. And what the Supreme Court said in Begay is we have to look at the enumerated offenses under Prompt 2. There's arson, explosives, burglary, extortion. And we have to ask whether this statutory offense is roughly similar in kind as well as in degree. Begay is really not apropos here because Begay, the drunk driving statute is a strict liability statute. And there's no way you can relate that to the Armed Career Criminal Act. This situation here where someone restrains someone, don't you automatically have someone that could act out and there could be a violent type of conduct from this type of a reaction to that type of conduct? I would submit no, Your Honor. And Begay does apply. The legal analysis of Begay applies. And what does it apply? How does drunk driving? Well, because the analysis would apply beyond just the DUI that was at issue in Begay. The analysis that they say a court should apply, you have to look at this particular offense. That was for the Armed Career Criminal Act. We're dealing with sentencing guidelines here. The Armed Career Criminal Act deals with violent type of conduct by armed criminals. And drug driving is a long way from and is a strict liability law. All of the Armed Career Criminal Acts are acts of intentional wrongdoing. There's no relationship. Begay is totally inappropriate. Well, I would respectfully disagree. This court has always applied the same type of analysis to the career offender provision as to the ACCA provision. This court has seen that the definition of violent felony under ACCA and the definition of crime of violence under the career offender provision is the same and is to be given the same analysis. And both statutes, whether it's career offender, whether it's crime of violence, or whether it's ACCA, you're looking at prior offenses and categorically determining whether or not it should qualify as a predicate offense. So what the Supreme Court said in Begay was we have to look at whether these offenses, whether the offense under consideration is similar in kind and in degree to the risk posed to these offenses that are enumerated, explosives, burglary, arson, and extortion. But does Begay, even if I think Judge Collins is probably right, but just say even if Begay was on point for you, doesn't it mean that Mr. Smith's crime was one of violence? That is, and I'll quote, knowingly holding another in a condition of involuntary servitude. And doesn't that, and then a quote, typically involves purposeful, violent, and aggressive conduct? No, Your Honor. I would concede on the, what Begay says is, first of all, these four enumerated crimes, these are all purposeful, violent, aggressive type offenses. So the question is, is involuntary servitude a violent, aggressive type crime? And what the Supreme Court said, and we've got to take one step back to James v. United States, 2007. You're taking what, persons against their will? You're holding them in involuntary servitude, which under Pennsylvania law could be for a matter of minutes, making them work for you with a threat, and the threat can be legal threat of deportation. And that is the typical involuntary servitude case. But here it would be a possible threat of significant injury. Forget the legal threat, there's no legal threat here. Well, we're not, again, we're going categorically. So it doesn't matter what the facts were here. But categorical allows you to go and say that in that type of involuntary servitude, it could be something where they are put in danger of being injured. Well, what James says is we have to look at the, to do this, we need to look at the elements of the offense under consideration, and we have to ask ourselves, given these elements, given the statutory scheme, what is the mine run offense? What is the typical offense that we're categorically going to be dealing with? We're not looking at the particular facts of this case. We're looking at the typical case under the Pennsylvania statute. Now, again, we go back to the statute. If there's a threat of injury, if there's a threat of serious bodily injury, we're not in prong two. We're in prong one. If there is a use of force or a threat of force, we're not in prong two. We're in prong one. Prong two are those cases where there's no threat of force, there's no use of force, and there is not a risk of serious bodily injury. That's the provision we're dealing with. And when you look at the comparable federal provision, the typical offense is where you have a worker being held under threat of deportation. And I would submit in that typical case, you do not have the same kind of aggressive, violent offense that you have with explosives, that you have with arson, that you have with burglary. It's a totally different kind of offense. It's not an offense similar in kind. And when we get to the other factor. The way I read this, starting with the guideline, is, let me just read two. Is burglary of a dwelling, comma, arson, comma, or extortion, comma, involves use of explosives, comma, or otherwise involves conduct that presents a serious potential risk of physical injury to another. Yes, John. Wouldn't that be what we're under? That's what we're looking at. I would submit your typical involuntary servitude case does not meet that definition. There's no inherent risk of physical injury? Well, let's take a look at the example, the typical case under federal involuntary servitude law. The typical case is you have a worker who's being threatened with deportation. Now, this is very different than when you have a threat of force being employed against that person. If there's a threat of force and the person knows, I can only leave here. I can only stop working by physical confrontation. My boss is telling me he's not going to let me go absent some kind of physical confrontation. There you have a real threat of bodily injury. Where the threat is, if you leave, I'm going to call up INS and I'm going to try to get you deported. He can leave. He can flee. He can run. He could choose to go and see if the boss will actually do that. He doesn't have to get into any kind of physical confrontation to leave the place of employment. The test is whether the statute extends to a substantial category of cases which there may be a physical problem, physical threat, physical violence. And there are, I mean, sure, there might not be, but there's a substantial chance that there can be physical force or problems here if you're restraining someone. Again, you have to look, there's not a restraint in the sense that you would have under fond one where somebody's being restrained with a threat of force or a use of force. This is an offense where somebody's being held, and held is defined as simply to have at one's disposal, under the dictionary, where somebody's being held at one's disposal by a legal threat. And there's not that same kind, certainly not comparable to arson and extortion and robbery. I'm interested in your least culpable means argument in Partika. I don't know if I'm pronouncing it correctly. Yes, Your Honor. Has least culpable means test ever been used in a Section 4B1 context? I cannot give you a citation to a case where it has. I'm not sure that it hasn't, but it would seem to make sense. But I think the James test is the one that now has to be employed. James came out in 2007, and they say you have to look at the elements, the statutory scheme, and see what the typical offense would be. And it's the kind of illegal immigrant situation that I'm describing. There's certainly nothing to the contrary in Pennsylvania, and there's lots of federal law on this as set forth in that footnote in that case that I provided to you. I'll ask reckless endangerment questions of your opposing counsel, and we'll get you back on. Thank you, Your Honor. Thank you. Good morning. My name is James Pavlak. I'm representing the government of the United States Attorney's Office in Philadelphia. Maybe you could just start with the – it seems that the – and we'll certainly have you talking enough on unlawful restraint, but the reckless endangerment, where's the element of – what makes that a crime of violence? Your Honor. Or do you just – it's up to you how you want to deal with it, but it seems like that one's got an issue. Well, Mr. Smith was convicted of two crimes of violence here. And you only need one. We only need one. The unlawful restraint involving a minor, a felony, and this recklessly endangering. With respect to the recklessly endangering, Your Honor, I would submit under the Begay and the James cases, we need to look – the court should look to what the Supreme Court – How can reckless be knowing? Well, Your Honor, I don't necessarily – reckless is not knowing. There are certainly several degrees of mens rea. Reckless is purposeful, though, and that's what Begay requires. I would submit to the court that the court needs to look at what the Supreme Court said both in James, starting with James, and counsel cited James extensively. James talked about a DUI case in Florida and described this second clause, where recklessly endangering would only qualify under the second clause, as a broad residuary clause. Congress intended a broad residuary clause. Does the conduct encompassed by the elements in the ordinary case present serious potential risk? As long as the offense by its nature presents a serious potential risk, it satisfies Clause 2. That's what James said. Begay went on to talk about what kind of crimes are roughly similar to the burglaries and the arsons. And I would submit that recklessly endangering is, notwithstanding the fact that it's reckless, still a roughly similar crime, both in the purposeful, aggressive, and violent nature of it, and the Supreme Court in Begay talked about what future aggressive and violent nature may come about as a result of the conduct, and secondly, as well as the degree of risk posed. Now, we have a recklessly endangering statute that specifically says, recklessly engaging in conduct that poses a serious risk or risk of death or serious bodily injury. Now, keep in mind, recklessly means a conscious disregard for a substantial risk. I would submit that that kind of crime is the same kind, roughly, in purpose, in aggression and violence, as the enumerated offenses. Begay requires, I mean, I can see that we've had not-presidential opinions that, pre-Begay, that have said that this is a crime of violence. Yes. But it looks like, to me, Begay requires more. It requires that, in addition, the crime must, quote, typically involve purposeful, violent, and aggressive conduct, close quote. Yes, and I was, the court is right. James and Begay establish an overlay with which we analyze, now, the kinds of crimes that are enumerated in that statute. But keep in mind, Begay dealt with a defined, strict liability DUI crime. The court was dealing with DUI. No mens rea. It's described as an accidental. When it talks about aggression, purposeful violence, it talks, and it specifically says, future, the potential for future aggression and violence. And under the Foreign Career Criminal Act, not under the sentencing guideline. Exactly. And I would submit to the court that you, in speaking with the defense counsel, notes a difference. Even though the language is the same, we are talking about a different rationale. But nonetheless, we are looking, we are trying to find out, will this criminal be more likely to commit a violent crime in the future? Or a crime in the armed career criminal sense, another crime with a gun. Is he more likely to commit some sort of violent crime because he's committed one of these enumerated offenses that poses a serious risk of potential serious injury? So I would submit, Your Honor, that recklessly endangering is different from Begay. It's different from the DUI. It's the conscious disregard of a substantial risk. And it's the kind of crime that the Supreme Court still wants to say is a crime of violence. How do you surmount the argument of your friend across the aisle? He raised some hypothetical scenarios where someone could be convicted of unlawful restraint that would not create a serious risk of harm to another person. Like immigrants. Yeah. Well, first of all, Your Honor. Under the categorical approach, we've got to say, well, it's not a crime of violence. First of all, Your Honor, I would submit that this particular statute is not the same as the federal statute. It wasn't briefed. That's the first time that I'd heard that the immigrant statute federally was raised. What we're dealing with is the – Well, these cases arise, a lot of them anyway. Well, they – With restraining immigrants. The Pennsylvania statute dealing with involuntary servitude, the Pennsylvania Supreme Court defined what involuntary servitude and the elements consist of. In the Wells Court, the Pennsylvania Supreme Court said that it involves force, coercion, or imprisonment. And I would submit to the court that under the first clause, if that's your question, that that constitutes physical violence. Secondly, there are several cases in Pennsylvania, as well as federal cases, dealing with involuntary servitude. Namely, the Desant case, the Dionesto case, the Wells case. These cases typically, when they're charged with an awful restraint in voluntary servitude, involve conduct. And the court is able to look at the typical case. That's what James requires, the ordinary case. Wells involved victims being required to be on the floor during a robbery. Dionesto, gunpoint in a car. The victim was forced to disrobe. Desant, the victim was forced at knife point in a car. That's typically what involuntary servitude, unlawful restraint, involves. And this court should not ignore that's the typical case, because that's what James says. Look at the typical, ordinary case. Is there any authority that 2902A2 requires force or violence? Or threat of force, I should say. I will submit the Wells court says that in Wells, Mr. Wells was convicted of involuntary servitude. The court defined that as force, coercion, or imprisonment. Is your argument stronger under the second definition of the crime of violence in the guidelines? The one I read previously. With respect to the reckless endangering and the unlawful restraint? Yeah, yeah. The crime of violence. As opposed to holding under the first clause? Conduct that presents a serious potential risk of physical injury to another. I think it's equally strong. I think that the argument that unlawful restraint fits more closely, I would submit and concede that that's probably a closer call. But I would submit to the court that for the reasons that I've stated already, recklessly endangering also is a crime of violence. Either one is a crime of violence. Yes, I would submit that. I'm messing you up. You were talking about unlawful restraint under the first prong of crime of violence under the sentencing guidelines, which talks about threatened use of physical force. Yes. Judge Cowen was saying might not it be a better fit under the second prong, which is conduct that presents a serious potential risk. With respect to unlawful restraint, yes. It speaks most broadly, doesn't it? Yes, I would submit that. Which clause did the court in this case use? First one, right? We addressed the first one in the district court. And that's more limited than the second clause. It is. And I would submit particularly because on the record here, we have a felony second degree involving a child. And that's the Riva case in Texas. The Riva case says that under the second clause, unlawful restraint of a child, a child is more susceptible to injury. And even in the case where the crime might be committed in the least aggressive way by means of a deception. In that case, it's a crime of violence under that second clause. And I would also direct the court's attention to this Dixon v. Ashcroft case. It's a Section 16 case out of the Second Circuit. But it talks about unlawful imprisonment. And even, the court said, where that unlawful imprisonment is accomplished by deception or intimidation. Force should be defined broadly. Don't artificially narrow the definition of physical force. There is a threat of force. Even if this particular involuntary servitude crime is accomplished by some sort of trick or intimidation, something less than actual the application of the hands-on force. So I would submit that under both. The threat of force you're talking about A2. Pardon me? You're talking about A2. No, I'm talking about, in Dixon, it talked about, it was a Section 16A case. But it's the same language as the physical application of physical force or threat of physical force. I'm suggesting, even where that's occurring in a circumstance of deception, that physical force can occur. In our case, the holding can be physical force, even if that holding is accomplished by deception. If we could screw the district court's decision as only holding Smith under unlawful restraint, conviction, and constitute a crime of violence under Clause I of the sentencing guideline, does that prevent us from analyzing whether the unlawful restraint conviction otherwise involved a potential serious bodily injury? No, I think you can analyze it under both. How can we if the district court only used I and not? Because I think that this court can look at any legal basis to sustain the district court's determination. We argued under the first clause. But it doesn't preclude a determination that involuntary restraint also qualifies under Clause II. And you acknowledge that Clause II would sweep much more broadly than Clause I? I think in this case, yes, it would. But I'll equally submit that it also qualifies under Clause I. I have no further questions. Thank you very much. Mr. Epstein. Thank you, Your Honor. The government referred to a number of Pennsylvania cases which you said are involuntary servitude cases. They're not. And if you look at them, and I urge the court to look at them, there is no indication in those cases whether or not it was 2902A1 or A2. And I would submit, given the facts of those cases, given the use of force, given the risk of substantial bodily injury in those cases, those would have been properly charged as A1, not A2. Can we decide to write this up under A2? Number one, can we? Are we allowed to do that? And you acknowledge that A2 would sweep much more broadly in the category of violence. I acknowledge that this court can affirm the district court on a different legal basis than was argued below. I would submit that the second prong of the crime of violence definition should not apply here. It's when you take the typical mine run involuntary servitude case that would fit under these elements. But under A2, we don't have to take a typical. We have to take a potential. The issue is whether there's a potential risk of bodily injury. Potential, that's not everything. Potential, but you have to. Possible. Exactly, Your Honor. And you have to look at the typical case that would fall under these elements, under this statutory scheme. Typical is not possible. When you say possible, it's atypical. I'm sorry, Your Honor. It could be atypical. I think we're dealing with two different issues. There's the issue of what is the potential risk of physical injury. If you're talking about potential risk. Right, potential risk of physical injury. What is the typical case, and does that typical case have a potential risk, serious potential risk of injury? And you have to look under this statute, these elements, what your typical case is. The prosecutor said that the federal statute is different. It's exactly the same. So you're saying does the typical case of unlawful restraint. Of involuntary servitude under these elements, this provision. Unlawful restraint, which is defined as including involuntary servitude. It is involuntary servitude. It's not unlawful restraint. Unlawful restraint is prong one. That's defined as having force or the threat of force. This is prong two. It can be satisfied simply by legal coercion. Keep in mind, it's not just involuntary. Commits an offense of unlawful restraint if he knowingly holds another in a condition of involuntary servitude. Yes, Your Honor. And the one case that addresses this under Pennsylvania law says that is simply to make someone labor for another by coercion. That's how it can be satisfied. Labor for another by coercion. Which case are you citing from? Commonwealth versus Wells, 468-2. Well says, a quote from Wells on page 330 of the Atlantic Second version, holding another in a condition of involuntary servitude is less serious than kidnapping, but more serious than false imprisonment. And it would seem that this has the potential of risk of injury to another. Physical injury to another. Well, it can be satisfied simply by coercion, legal coercion. If it has a threat of force or use of force, then that could be properly charged as A1, not A2. So it can be satisfied simply by coercion, legal coercion. What does A1 say? Excuse me? What does A1 say? 2902A1, what does that say? A1 says restrains another unlawfully in circumstances exposing them to risk of serious bodily injury. A1 are the cases where you have a risk of bodily injury. A2 are the cases where you're just making somebody work for you under a threat, and the threat can simply be, I will call the police and have you deported if you don't continue working for me. That's what we see under the exact same statute federally. That statute, just like the Pennsylvania one, says, whomever knowingly and willfully holds to involuntary servitude, any person can be imprisoned up to five years, holds to involuntary servitude. It's the exact same as Prong 2 of the Pennsylvania statute. That's a crime that does not have anywhere near the potential risk of serious bodily injury that you have with arson and explosives and burglary. It's just a different type of crime. I don't see that if you're threatening to hold someone in a work situation that they don't want to be in, that they might act out and respond. I don't believe so, and here's why. That person is under risk of deportation. Are they going to want to engage in a physical confrontation that could lead to the authorities coming? No. They're going to want to get out of there. Same with the boss. He's not going to want to have the police come and find out that he's hiring illegal aliens. That's a situation where really it's like the Supreme Court in James. They were looking at extortions without force of threat, without threat or force of threat, where you have somebody, say, being blackmailed with, if you don't do what I want I'm going to expose embarrassing personal information about you. They say that's a risk of bodily injury approaching zero, and I would submit that's what we have here in the typical case that would fall under this provision. Thank you very much. Thank you, Your Honor. Thank you to both counsels for a well-presented argument. We'll take the matter under advisement. And are the counsel here for the last case? Okay. Thank you.